STARLIGHT MINE, JAMES MATTATALL, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; STARLIGHT MINE, ANN B. MATTATALL, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Starlight Mine v. Commissioner
Docket Nos. 20121-87, 26902-89
United States Tax Court
T.C. Memo 1991-59; 1991 Tax Ct. Memo LEXIS 75; 61 T.C.M. (CCH) 1892; T.C.M. (RIA) 91059; February 13, 1991, Filed *75 James Mattatall, pro se in docket No. 20121-87.
Ann B. Mattatall, pro se in docket Nos. 20121-87 and 26902-89. Robert S. Schriebman, for participant Jerry Gross in docket No. 20121-87. Louis B. Jack, for the respondent. NAMEROFF, Special Trial Judge.
NAMEROFF
MEMORANDUM OPINION These cases were assigned pursuant to section 7443A of the Code [1] and Rules 180 and 181. These cases are before the Court on various motions to dismiss, as will be described infra. Starlight Mine (hereinafter Starlight or the partnership) is a partnership for which the provisions of section 6221 et seq. are applicable. The 1983 tax year of Starlight came under examination by respondent's agent Jim Steins (Steins) in 1985. The 1983 Form 1065 for the partnership was signed by M. W. Mattatall (Marsden) as general partner. Marsden, the husband of Ann B. Mattatall (Ann) and the father of James *76 Mattatall (James), died in April 1985. He had been the sole general partner of Starlight. During his life, Marsden had also been the sole general partner and tax matters partner (TMP) of several other partnerships, which also came under examination by Steins. On May 14, 1986, Steins wrote to James enclosing a document request for Starlight for 1983, which document request was captioned: "Estate of Marsden Mattatall % Starlight". The letter contained the following sentence: The review staff has advised us that they will not accept cases where there is no documentation without at least summoning the TMP. I would rather not take a trip to Torrance and I'm sure you would rather not have to come down here.
By letter dated May 22, 1986, respondent selected a limited partner, Jerry Gross (Gross) to be the TMP of Starlight for 1983. Attached to the letter was respondent's notice of the beginning of examination of the partnership, which also was addressed to Gross, as well as a copy of a "summary report" dated May 22, 1986. The letter was sent to 5 Chicory Way, Irvine, CA 92715, which was the address for Gross shown on the Schedule K-1 attached to Starlight's 1983 return. *77 On March 24, 1987, copies of a Notice of Final Partnership Administrative Adjustment (FPAA) for partnership items regarding the partnership's 1983 taxable year were mailed to "Starlight Tax Matters Partner," 4009 Pacific Coast Highway, Suite 491, Torrance, California 90505; and to Gross as TMP at 5 Chicory Way, Irvine, California 92715 and 5002 McFadden #40, Santa Ana, California 92704. On April 15, 1987, Gross sent respondent the following letter: Please be advised that I cannot act as [TMP] for the referenced partnership. I will be working in Israel for the next year or so, I do not have the address of the other partners. I have sent everything that you sent me to Mr. Schriebman who has agreed to act as the [TMP] on my behalf.
The letter states that Gross' California address is 5002 McFadden #40, Santa Ana, CA 92704. Mr. Schriebman, Gross' attorney, promptly advised Gross that he (Schriebman) was not Starlight's TMP nor did he represent the TMP. On June 25, 1987, a petition was timely filed in docket No. 20121-87 captioned Starlight Mine, James Mattatall, Tax Matters Partner. James alleges therein that he was the TMP for Starlight. Attached to the petition was *78 a memorandum addressed to all partners of the partnership advising them that a petition was filed on behalf of the partnership for the year 1983. A certificate of service attached thereto certified that a copy of the memorandum was served on 67 partners of the partnership, the names and addresses of which were attached thereto. Respondent filed his answer on August 3, 1987, admitting, inter alia, that James was the TMP. In fact, James, at least up until the date of the petition, did not own any partnership interest in Starlight. On July 17, 1989, respondent moved to dismiss docket No. 20121-87 for lack of jurisdiction on the ground that the petition was not filed by the TMP. James filed an objection to respondent's motion, alleging that he was informed by Steins that he was the TMP, but acknowledged that he was not a limited or general partner of the partnership. James alleges that an FPAA was mailed to Gross, but that James was not aware that Gross had been designated as the TMP. The objection concludes that neither James nor Gross were proper choices as TMP under section 6231(a)(7) and that, therefore, the FPAA's were invalid. Subsequently, James, Gross, and Ann filed various *79 motions and supplements thereto to dismiss docket No. 20121-87 on the ground that the FPAA was invalid and invalidly mailed to an improper address. In some of the motions, it is alleged that Ann as the surviving spouse of Marsden, under California community property succession laws, succeeded to the properties, rights and obligations of her deceased husband, and that respondent should have selected her as the TMP. It is contended that, having failed to select Ann as TMP, the FPAA was invalid. In docket No. 26902-89, Ann alleges that she is the true TMP for Starlight "solely by reason of default due to the sudden death of petitioner's husband Marsden Mattatall the general partner and original TMP." Respondent moved to dismiss docket No. 26902-89 for lack of jurisdiction on the ground that the petition was untimely, having been filed more than two years after the mailing of the FPAA. Because of the common issues present in these two dockets, the cases were consolidated for purposes of the hearing, briefing, and opinion. [2] Hereinafter for convenience, James, Ann, and Gross will collectively be referred to as petitioners. *80 The first question to resolve is whether the FPAA is valid. Petitioners contend that the FPAA was not sent to the TMP, and, in any event, it was not sent to the correct address. On May 22, 1986, respondent selected Gross to be the TMP. Respondent was aware that Marsden was deceased, but was not aware of the existence of any estate probate proceedings or the then-current ownership of the general partnership interest. The partnership did not designate a new TMP. See generally section 301.6231(a) (7) -1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987), regarding designation, resignation, and termination of a TMP. Section 6231(a) (7) defines the TMP as the general partner designated by the partnership as the TMP, or, if one has not been designated, then it is the general partner having the largest profits interest. If no general partner is designated, and the largest profits test is determined by respondent to be impracticable to apply, respondent may select a partner as TMP. There are no other restrictions to this selection in the statute. We cannot say, based upon the record before us, that respondent acted improperly, even though (1) Gross *81 was a limited partner; (2) his percentage share of the partnership's profits was smaller than that of other limited partners; and (3) his residence was not closer to respondent's office than other limited partners. The Chicory address was that shown for Gross on the partnership's tax return and previously used by respondent in selecting Gross as TMP. Accordingly, when the FPAA was mailed on March 24, 1987, it was properly addressed to Gross as TMP at the Chicory address. Gross' subsequent letter of April 15, 1987, is not relevant to the validity of the mailing of the FPAA. James, however, contends that he was selected by Steins as the TMP during the audit. Alternatively, he contends that respondent treated James as the TMP and is therefore estopped from denying it. First of all, the record does not support James' contentions. There is no document wherein James was selected by respondent. Moreover, most of the communications between James and respondent, including the letter of May 14, 1986, precede the actual selection of Gross. Most of the evidence presented relates to James' role in connection with the other partnerships created by Marsden, for which James may have had *82 partnership interests and may have been the TMP designate or selectee. Many of the communications seem to blur the distinctions between the various partnerships. However, the fact that respondent may have selected James as TMP in one or more partnerships does not create a de facto selection in Starlight, regardless of any connection between Starlight and the other partnerships. There is no authority for a "broad brush" selection of TMP; it must be accomplished partnership by partnership. In addition to sending the FPAA to Gross, a copy of the FPAA was sent to Starlight TMP at 4009 Pacific Coast Highway. This copy is what is commonly referred to as a generic FPAA, and we have held that generic FPAA's are valid. See Chomp Associates v. Commissioner, 91 T.C. 1069, 1072-1074 (1988). The address used by respondent was the address on the partnership's tax return. While respondent knew that Marsden was deceased, that the address of the partnership may have been a mailbox drop, and that James and Ann had a different address, respondent was not specifically informed of any change of address for the partnership. Therefore, respondent acted in accordance with the *83 regulations, and the mailing of the FPAA was proper. See section 301.6223(a)-1T(a), Temporary Proced. & Admin. Regs., supra. A timely petition from either the FPAA sent to Gross or the generic FPAA would give this Court jurisdiction. [3]
The next question to be resolved is whether the petition filed by James as TMP is valid. We have frequently held that an individual who is not a partner cannot qualify as a TMP. Montana *84 Sapphire Associates, Ltd. v. Commissioner, 95 T.C. 477 (1990); 1983 Western Reserve Oil & Gas Co. v. Commissioner, 95 T.C. 51 (1990); see also Sente Investment Club Partnership of Utah v. Commissioner, T.C. Memo 1988-376. James was neither a general nor limited partner and therefore cannot qualify as a TMP. [4] Therefore, the petition is defective in that it was not filed by the TMP. In several cases where a defective petition was timely filed, we have granted leave to file an amended petition. "Defects in an imperfect petition may be cured by the filing of an amended petition if there is evidence that the original signatory was duly authorized to file the original petition on behalf of the nonsigning petitioner." Summerland Partnership v. Commissioner, T.C. Memo 1988-548, 1988 Tax Ct. Memo LEXIS 577, 56 T.C.M. (CCH) 759, 761, T.C.M. (RIA) 88548 *85 at 2837. See also Rules 60(a) and 41(d); Sente Investment Club Partnership of Utah v. Commissioner, supra.The grant or denial of leave to amend a defective petition is within the Court's discretion. Rule 60(a); Brooks v. Commissioner, 63 T.C. 709, 714 (1975). There is some evidence in the record that James believed he was authorized by the general partner or some limited partners to file the petition. If we were to grant respondent's motion to dismiss docket No. 20121-87, filed nearly two years after the petition and answer were filed, the partners of Starlight would have no judicial remedy with respect to the partnership adjustments determined under the FPAA. See Montana Sapphire Associates, Ltd. v. Commissioner, supra. We do not believe it to be appropriate to dismiss this petition under these circumstances without first giving Starlight the opportunity to advise the Court of the name of the person to be designated TMP and for that person to have the opportunity to ratify the original petition. Accordingly, respondent's motion to dismiss docket No. 20121-87 for lack of jurisdiction will be held in abeyance *86 and the Court will allow 60 days for such actions to take place. Petitioners' motions to dismiss on the grounds of an invalid FPAA will be denied. In addition, it is clear that Ann's petition from the FPAA is untimely, and respondent's motion to dismiss docket No. 26902-89 will be granted. James and Ann allege that they have spent a substantial sum of money for tax counsel fees in detrimental reliance on Stein's representations. They contend that, if James was erroneously selected as TMP, the Court should order a total reimbursement of all professional fees and costs incurred to assume the duties and responsibilities of the TMP. We note that such allegations are not appropriate nor timely under our rules for recovery of administrative and litigation costs. See Rules 230-232. Finally, Gross has requested that an adverse decision and interlocutory order of this Court be certified pursuant to Rule 193 and section 7482(a)(2) for purposes of an immediate appeal to the Ninth Circuit. In view of our holding herein, affording the partners an opportunity to perfect their rights to have the partnership items readjusted, there is no need to consider this question. Appropriate orders *87 will be issued. Footnotes
1. All section references are to the Internal Revenue Code. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. It should also be noted that several motions were filed by the parties in connection with discovery matters. Those motions were held in suspense pending outcome of the various motions to dismiss for lack of jurisdiction. In view of our disposition herein, the need to examine respondent's administrative file for documents concerning James' alleged designation or selection as TMP is moot. Therefore, the motions to compel and respondent's motions for protective orders will be denied.↩
3. Cf. Mulvania v. Commissioner, 769 F.2d 1376, 1379-1380↩ (9th Cir. 1985), affg. a Memorandum Opinion of this Court, holding that jurisdictional defects with regard to the mailing of a notice of deficiency to the wrong party or to the wrong address are cured by the timely filing of the petition. Petitioners also contend that the FPAA was invalid because not all the notice partners were sent copies of the FPAA. However, see section 6223(e) for a notice partner's rights in such a situation; there is no provision therein for invalidating an FPAA sent to the TMP.
4. We are not bound in this regard by respondent's admission in his answer that James Mattatall is the TMP.↩